**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF VIRGINIA**
**(Roanoke Division)**

CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
July 24, 2024
LAURA A. AUSTIN, CLERK
BY: s/ M.Poff, Deputy Clerk

| | |
|---|---|
| **CHANDRA DOGAN**, on behalf of herself and others similarly situated | ) ) ) |
| *Plaintiff,* | ) ) |
| v. | ) ) Civil Action No. ___7:24cv00478___ |
| **ROANOKE JH, LLC,** **d/b/a Woodland Hills Independent,** **Assisted Living and Memory Care Community,** SERVE: R/A: Elliot P. Fitzgerald 2847 Penn Forest Blvd. Roanoke, VA 24018 | ) ) ) ) ) ) ) ) |
| -AND- | ) ) |
| **RETIREMENT UNLIMITED, INC.,** SERVE: R/A: Elliot P. Fitzgerald 2847 Penn Forest Blvd. Roanoke, VA, 24018 | ) ) ) ) ) |

**CLASS CERTIFICATION REQUESTED**

**JURY TRIAL DEMANDED**

## COMPLAINT

COMES NOW Chandra Dogan ("Ms. Dogan" or "Named Plaintiff"), by and through undersigned counsel, individually and on behalf of other members of the general public similarly situated (collectively "Plaintiffs"), and files this Complaint against Roanoke JH, LLC ("Woodland Hills") and Retirement Unlimited, Inc. ("RUI") for failing to pay employees for all time worked and recorded on employees' timesheets and seeks all available relief under the Fair Labor Standards Act, 29 U.S.C. § 203 et seq. ("FLSA") and the Virginia Wage Payment Act, Va. Code Ann. § 40.1-29 et seq. ("VWPA"). Named Plaintiff asserts an individual claim against Defendants for failing to properly provide FMLA leave in violation of the Family Medical Leave Act

("FMLA"), 29 U.S.C. § 2601. Named Plaintiff also brings an individual claim against Defendants for wrongfully terminating her health insurance in violation of and the Consolidated Omnibus Budget Reconciliation Act ("COBRA") and Employee Retirement Income Security Act, 29 U.S.C §§ 1001, et seq.

The following allegations are based on personal knowledge as to Named Plaintiff's own conduct, on documents produced by Defendants, and on information and belief as to the acts of all others. Named Plaintiff, individually and on behalf of others similarly situated, hereby states as follows:

## I.    INTRODUCTION

1.    This case involves the Fair Labor Standards Act, the Virginia Wage Payment Act, Va. Code Ann. § 40.1-29, the Family and Medical Leave Act, the Consolidated Omnibus Budget Reconciliation Act, and the Employee Retirement Income Security Act. Plaintiff has evidence that Defendants violated state and federal wage laws by failing to pay employees for all time worked and recorded on employees' timesheets; knowingly failed to properly provide Ms. Dogan with FMLA leave; and wrongfully terminated her health insurance.

## II.    JURISDICTION AND VENUE

2.    This action arises  under the Fair Labor Standards Act ("FLSA"), The Virginia Wage Payment Act, Va. Code Ann.  § 40.1-29, The Family Medical Leave Act ("FMLA"), as amended, 29 U.S.C. § 2601, et seq., Consolidated Omnibus Budget Reconciliation Act ("COBRA"), and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C §§ 1001, et seq.

3.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims are substantially founded upon federal law.

4.     This Court has supplemental jurisdiction over the claims arising under Virginia state law because they are so related to the federal claims that they form part of the same case or controversy. 28 U.S.C.§ 1367.

5.     Venue lies in the Western District of Virginia ("this District") under 28 U.S.C. § 1391 because Defendants employed Named Plaintiff and other similarly situated employees in this District, a substantial part of the events or omissions giving rise to the claim occurred in this District, and Defendants have done substantial business in this District.

**III.    PARTIES**

**Named Plaintiff**

6.     Plaintiff Chandra Dogan is an individual, a United States citizen, and a resident of the Commonwealth of Virginia.

7.     At all relevant times herein, Chandra Dogan was employed by Woodland Hills.

8.     Named Plaintiff brings this action on behalf of herself and those similarly situated, and she has given her written consent to bring this action to require Woodland Hills to pay her and all others similarly situated for all underpaid overtime premiums and seeks all available remedies for Defendant's violations of the FLSA and VWPA. Pursuant to Fed. R. Civ. P. 23 and 29 U.S.C. § 216(b), Named Plaintiff's consent is attached hereto as **Exhibit 1**.

**Proposed Collective Class (FLSA)**:

9.     All non-exempt employees who worked for Defendants at any time between July 24, 2021, and July 24, 2024, who earned non-discretionary bonuses that were not properly included in their regular rates of pay or overtime premiums.

**Proposed Collective Class 2 (FLSA)**:

10.    All non-exempt employees who worked for Defendants at any time between July 24, 2021, and July 24, 2024, who earned overtime wages that were not properly paid according to the rates required by the FLSA.

11.    Under 29 U.S.C. § 216(b), employees who worked for Defendants must affirmatively opt-in to become members of either FLSA class.

**Proposed Fed. R. Civ. P. 23 Classes:**

12.    All employees who worked for Defendants at any time between July 24, 2021, and July 24, 2024, who earned non-discretionary bonuses that were not included in their regular rates of pay or overtime premiums.

13.    This violation gives rise to claims under the VWPA.

14.    Under Fed. R. Civ. P. 23, employees who worked for Defendants must affirmatively opt-out if they do not wish to be members of this class.

**Defendants**

15.    Defendant Roanoke JH, LLC ("Woodland Hills") is a limited liability company formed in the State of Delaware.

16.    Woodland Hills operates a facility in Roanoke, Virginia, that takes care of elderly patients and residents staying at the facility.

17.    Defendant Retirement Unlimited, Inc. ("RUI") is a corporation formed in the Commonwealth of Virginia.

18.    RUI operates several facilities in Virginia that take care of elderly patients and residents staying at those facilities, including Woodland Hills in Roanoke, Virginia.

IV.    **LEGAL PRINCIPLES: CLASS ACTION ALLEGATIONS**

**Fair Labor Standards Act**

19.    The Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203 et seq., establishes minimum wage, overtime pay, record keeping, and employment standards for employees in the private sector and in federal, state, and local government.  Defendants are  subject to the FLSA's overtime requirements because their  annual gross volume of sales is not less than $500,000.

20.    Under the FLSA, employers must pay non-exempt hourly employees such as Named Plaintiff for all hours the employer suffers or permits them to work.

21.    Moreover, non-exempt hourly employees must receive not less than time and one-half (1.5) their regular rate of pay that week for all hours worked beyond 40 each week.

22.    29 USC § 207(e) states that "the regular rate of pay should include all remuneration for the employment paid to … the employee."

23.    29 CFR § 778.208 states that the only types of payment that can be excluded from the regular rate of pay calculations are as follows: discretionary bonuses, gifts and payments on special occasions, contributions by employers to certain welfare plans, payments made by the employer pursuant to certain profit-sharing, thrift and savings plans.

24.    29 CFR § 778.208 also states that bonuses which do not qualify under these exclusions from the regular rate must be totaled in with other earnings to determine the regular rate on which overtime pay must be based (See **Exhibit 2**) (showing the Department of Labor's Fact Sheet # 56C which explains how bonuses should be added to find the correct rate of pay).

25.    Under 29 U.S.C. § 216(b), "Any employer who violates the provisions of  section 206 or section 207 of this title [concerning minimum wage and overtime wages] shall be liable to

the employee or employees affected in the amount of their unpaid minimum wages … and in an additional equal amount as liquidated damages" in addition to attorney fees and costs.

**The Virginia Wage Payment Act, Va. Code Ann. § 40.1-29**

26.     The VWPA requires employers to timely pay employees for all hours worked as well as comply with the FLSA's minimum wage and overtime requirements.

27.     Va. Code Ann. § 40.1-29(C) provides that "[n]o employer shall withhold any part of the wages or salaries of any employee except for payroll, wage or withholding taxes or in accordance with law, without the written and signed authorization of the employee."

28.     Under Va. Code Ann. § 40.1-29(J), "if an employer fails to pay wages to an employee in accordance with this section or § 40.1-29.2, the employee may bring an action, individually ... against the employer in a court of competent jurisdiction to recover payment of the wages, and the court shall award the wages owed, an additional equal amount as liquidated damages, plus prejudgment interest thereon as provided in subsection G [8%], and reasonable attorney fees and costs."

29.     Moreover, "[i]f the court finds that the employer knowingly failed to pay wages to an employee in accordance with this section or § 40.1-29.2, the court shall award the employee an amount equal to triple the amount of wages due and reasonable attorney fees and costs." Id.

30.     "[A] person acts 'knowingly' if the person, with respect to information, (i) has actual knowledge of the information, (ii) acts in deliberate ignorance of the truth or falsity of the information, or (iii) acts in reckless disregard of the truth or falsity of the information. Id.

31.     Establishing that a person acted knowingly shall not require proof of specific intent to defraud." Va. Code Ann. § 40.1-29(J).

32.    Under Va. Code Ann. § 40.1-29(L), affected employees have three years to seek damages for violations of the VWPA.

## V.    LEGAL PRINCIPLES: INDIVIDUAL ALLEGATIONS

### Family and Medical Leave Act

33.    The Family Medical Leave Act ("FMLA"), as amended, 29 U.S.C. § 2601, et seq., guarantees employees the right to up to twelve workweeks of unpaid leave from work without fear of losing their jobs after the employee has worked for at least twelve months with the employer and at least 1,250 hours with the employer during the previous 12-month period. 29 U.S.C. § 2611.

34.    An employer is not allowed to interfere with the right to this leave, or it may become liable to the employee for compensation and other damages. 29 U.S.C. § 2615.

35.    Within five days of an employee's first request for FMLA leave, her employer is required to give her oral or written notice of her eligibility for FMLA leave and written notice of all duties, rights, and responsibilities that she has under FMLA.

36.    Failure to provide either or both of these notices, may result in interference with an employee's claim for FMLA and may result in liability for the employer for compensation and benefits lost. 29 CFR § 825.300.

37.    During FMLA leave, an employer is required to maintain coverage under any group health plan for the duration of the leave at the same level and under the same conditions as would have been provided if the employee was not on leave. 29 U.S.C. § 2614.

38.    In the event that an employee does not pay their share of health insurance premiums during FMLA leave, the employer may only cancel the insurance coverage after both: the payment is more than thirty days late and the employer has provided written notice of the need to pay at least fifteen days before the termination of the coverage. 29 CFR § 825.212.

39.     Any employer who violates 29 U.S.C. § 2615 shall be liable for damages equal to the amount of any wages and employment benefits lost because of the violation, any interest on the wages and benefits lost calculated at the prevailing rate, an additional amount in liquidated damages equal to the sum of the lost wages, benefits, and interest, and possible equitable relief including reinstatement. 29 U.S.C. § 2617.

40.     The court in such an action shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant.

41.     If an employer has violated the FMLA, an employee may also be awarded any actual monetary loss sustained by the employee as a direct result of the violation, such as the cost of medical care, up to the amount of 12 weeks of wages for the employee plus an equal amount in liquidated damages. 29 CFR § 825.400

**<u>Consolidated Omnibus Budget Reconciliation Act of 1985</u>**

42.     "The Consolidated Omnibus Budget Reconciliation Act, also known as COBRA, is a federal statute, passed in 1985, that provides employees and their families the right to continue group health benefits under an employer's group health plan if their work situation changes." 26 CFR § 54.4980B-1.

43.     "To exercise this right, the employee must have been a member of a qualified group plan. The employee must also have had a qualifying event such as voluntary or involuntary job loss, reduction in hours worked, or a divorce which leads to a loss of coverage." 26 CFR § 54.4980B-4.

44.     "While COBRA requires employers to offer qualifying participants the option to continue their workplace insurance coverage, the employee is responsible for all payments up to

102% of the plan's premium related to that coverage, including the former employer's contribution." 26 CFR § 54.4980B-8.

45.     "An employer must notify an eligible employee of their right to continued coverage and that employee has 60 days after they've been notified to elect whether to waive COBRA coverage or not. The continued coverage under COBRA lasts for 18 months but may be extended to 36 months under certain circumstances." 26 CFR § 54.4980B-6.

46.     Under ERISA, various damages and equitable remedies are available to plaintiffs in the jurisdiction of Virginia, specifically within the Western District of Virginia. These include compensatory damages, equitable relief such as injunctions, and other forms of appropriate equitable relief. Adams v. Brink's Co., 372 F. Supp. 2d 854 (W.D. Va. 2005)

47.     In the context of the Employee Retirement Income Security Act of 1974, 29 U.S.C.S. § 1001 et seq., "[R]einstatement, as a general equitable concept, is within the range of redress permitted by the phrase other appropriate equitable relief." Griggs v. E.I. Dupont De Nemours & Co., 237 F.3d 371, 385 (4th Cir. 2001)).

**Employee Retirement Income Security Act, 29 U.S.C §§ 1001, et seq.**

48.     The Employee Retirement Income Security Act of 1974 ("ERISA") sets minimum standards for private companies regarding most voluntarily established health plans to protect individuals in these plans. Employee Retirement Income Security Act, 29 U.S.C §§ 1001, et seq.

49.     Under 29 U.S.C. § 1133, participants of employee benefit plans are entitled to adequate notice in writing explaining why a claim for benefits has been denied with specific reasons for the denial written in a manner to be understood by the participant.

50.     Under the same section, the participant must be given a reasonable opportunity for the denial to be fully and fairly reviewed by the appropriate fiduciary of the decision to deny the claim.

51.     Under 29 U.S.C. § 1132(a)(1)(B), a person covered by a plan regulated by ERISA is entitled to bring an action in federal court for wrongful denial of insurance benefits.

52.     Under 29 U.S.C. § 1161, ERISA entitles qualified beneficiaries, who would otherwise lose coverage after a qualifying event, to elect, within the defined election period, to continue coverage under the plan.

53.     A qualifying event includes termination of the covered employee, as long as it was for reasons other than the employee's gross misconduct. 29 U.S.C. § 1163.

54.     The defined election period shall not start later than the date on which coverage terminates by reason of a qualifying event, shall be at least sixty days' duration, and shall not end earlier than sixty days after the later of the date coverage terminates or, in the case of a qualified beneficiary, the date of the beneficiary's notice.

55.     The administrator of the plan shall notify any qualified beneficiary of her rights to continued benefits as a beneficiary within 14 days of a qualifying event, such as termination for a reason other than gross misconduct. 29 U.S.C. § 1166.

56.     Under ERISA, various damages and equitable remedies are available to plaintiffs in the jurisdiction of Virginia, specifically within the Western District of Virginia. These include compensatory damages, equitable relief such as injunctions, and other forms of appropriate equitable relief. Adams v. Brink's Co., 372 F. Supp. 2d 854 (W.D. Va. 2005)

57.    "[T]he courts have held that the phrase 'appropriate equitable relief' in ERISA §

502(a)(3) encompasses only those categories of relief that were typically available in equity (such

as injunction, mandamus, and restitution, but not compensatory damages)." Id. at 906.

58.    In the context of the Employee Retirement Income Security Act of 1974, 29

U.S.C.S. § 1001 et seq., "[R]einstatement, as a general equitable concept, is within the range of

redress permitted by the phrase other appropriate equitable relief." Griggs v. E.I. Dupont De

Nemours & Co., 237 F.3d 371, 385 (4th Cir. 2001)).

59.    The Courts have also held that Plaintiffs seeking relief under §502(a)(1)(B) may

seek reimbursement for treatments that the Plaintiff paid for herself that should have been covered

by her employee insurance plan. Rose v. PSA Airlines, Inc., 80 F.4th 488, 494–495 (4th. Cir 2023).

60.    "In any action under this subchapter (other than an action described in paragraph

(2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable

attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1).

**Interference under ERISA, 29 U.S.C § 1140**

61.    Under 29 U.S.C. § 1140, "[i]t shall be unlawful for any person to discharge, fine,

suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any

right to which he is entitled under the provisions of an employee benefit plan, this subchapter,

section 1201 of this title, or the Welfare and Pension Plans Disclosure Act [29 U.S.C. 301 et seq.],

or for the purpose of interfering with the attainment of any right to which such participant may

become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act."

62.    To enforce this section, 29 U.S.C. § 1132 (ERISA § 502) shall apply. 29 U.S.C. §

1140.

63.     Under ERISA, various damages and equitable remedies are available to plaintiffs in the jurisdiction of Virginia, specifically within the Western District of Virginia. These include compensatory damages, equitable relief such as injunctions, and other forms of appropriate equitable relief. Adams v. Brink's Co., 372 F. Supp. 2d 854 (W.D. Va. 2005)

## VI.    STATEMENT OF FACTS

64.     Plaintiff began working for Defendants in August 2020 as a charge nurse.

65.     On Friday, November 11, 2023, Plaintiff's back was injured when the elevator she occupied in Defendant's building malfunctioned and plummeted to the first floor.

66.     Plaintiff immediately reported the incident by text to Kim Gunn, the Director of Nursing.

67.     By Monday afternoon, Plaintiff's injuries worsened and the painful burning sensations in her back increased to an excruciating level.

68.     Plaintiff immediately texted Ms. Gunn about the pain that she had experienced since the elevator's drop and the increasing severity of the pain.

69.     Plaintiff also asked Ms. Gunn about the procedure and paperwork necessary for her to see a doctor about the pain at a nearby urgent care facility.

70.     Ms. Gunn told Plaintiff that she needed to speak with Ashlee Gardner, an HR representative before she was able to receive the paperwork for a doctor's appointment.

71.     Plaintiff called Ashlee's office twice and left a voicemail that day, but Ashlee did not get back with Plaintiff on November 13.

72.     Because she was scheduled to work that night, Plaintiff asked Ms. Gunn if it was possible to delay her shift from 7 PM until 11 PM to give her some more time to reduce the pain in her back.

73.     Ms. Gunn refused, stating that Plaintiff was scheduled to begin at 7 PM and arriving to work at any later time would result in points against her.

74.     Later that day, Plaintiff texted Ms. Gunn telling her to go ahead and mark her as late because she needed to go to the ER to have someone look at her back and help her with the pain.

75.     While visiting the ER, Plaintiff texted Ms. Gunn informing her that she would not be able to make it for her shift.

76.     Later that night, the ER gave Ms. Dogan a note stating that she should not work until November 20, 2023, and gave her some prescriptions to alleviate some of her pain.

77.     The next day, Ms. Gunn texted Plaintiff demanding to know when Plaintiff would be back to work.

78.     Plaintiff told Ms. Gunn about the work note that the ER gave her and the medicines that they had prescribed for her pain.

79.     During Plaintiff's week off, Ms. Gardner never called back or attempted to check with Plaintiff about the message she left or her need for the medical paperwork.

80.     Despite her pleas to Ms. Gunn to help her get in contact with Ms. Gardner, Plaintiff did not receive any calls from Ms. Gardner until November 22 after a friend at a care facility had called on her behalf about making an appointment.

81.     When Ms. Gardner finally called, she asked about the incident and told Plaintiff she would need to fill out paperwork before seeing a doctor approved by Defendant.

82.     Plaintiff went to Family Express Urgent Care for medical treatment because it was listed as an approved provider.

83.    While there, the doctor took x-rays, stated that Plaintiff should not return to work until November 25, and placed her on limited duty including limits on bending, pulling, pushing, and other repetitive motions.

84.    The doctor also filled out Plaintiff's workers compensation paperwork and gave her a referral for an orthopedic specialist.

85.    On November 24, 2023, Ms. Gunn asked Plaintiff about her return to work.

86.    Plaintiff expressed concern about the three-hundred-pound cart she was required to push around and the limited work duties that the doctor had told her to follow.

87.    Ms. Gunn told Plaintiff that she should take Friday, November 25, off due to safety concerns and that she should meet with Ms. Gardner on Monday about her doctor's note and her workers compensation claim.

88.    On Monday, November 28, Ms. Dogan had a follow-up appointment with her doctor for prescription refills, and the doctor extended her work excuse to November 29.

89.    On November 29, Ms. Dogan received a call from Carillion Orthopedic about seeing her that afternoon for further evaluations by Jason Peery, PA.

90.    Jason Peery looked at Plaintiff's x-rays and said that he thought he had seen a fracture but wanted to have an MRI done to better evaluate her condition.

91.    The orthopedic office also gave Plaintiff forms for Defendants to complete on her workers compensation claim and fax back to them.

92.    The night of her appointment with Jason Peery, Ms. Dogan took a Covid test that returned positive.

93.    After sending a picture of the test result to Ms. Gunn, Ms. Dogan asked about Defendant's policy of reporting to work to be tested by management.

94.    Ms. Gunn never responded to any texts about Plaintiff's positive test; therefore, Plaintiff remained away from work for five days, as required by Defendant's prior Covid policy.

95.    The next day, Lauren Atkins, a representative of Sentry Insurance, finally reached out to Plaintiff about her claim and how to move forward.

96.    Plaintiff relayed to Ms. Atkins the incident in the elevator and all doctor's visits since the incident.

97.    On November 30, 2023, Ms. Atkins contacted Plaintiff via e-mail about the need for her to see an orthopedist from a pre-approved panel despite her previous visit with Jason Peery.

98.    On the pre-approved panel, Plaintiff's options included Dr. Vivek Natarajan from Carillion Orthopedic.

99.    Because Dr. Natarajan practiced at the same place as Jason Peery, Ms. Dogan chose him for her future appointments.

100.    On Monday, December 4, 2023, Plaintiff again texted Ms. Gunn about her positive COVID test because the five days were about to end and sent pictures of her work excuses from previous appointments.

101.    Plaintiff also sent over some paperwork from Carillion that Defendants needed to complete and return.

102.    Ms. Gunn never responded to any of these texts.

103.    On December 6, Cindy Stanford, another consultant on Plaintiff's claim, informed Plaintiff that she could not see Dr. Natarajan because he was in the same office as Jason Peery and that the other pre-approved doctors were no longer available either; because of this situation, Plaintiff needed to wait for further instruction from them.

104.    During the next week, Plaintiff again attempted to contact Ms. Gunn and Ms. Gardner about coming back into work and what her expected timeframe should be.

105.    When she finally spoke with Ms. Gunn and Ms. Gardner, each told her that she needed permission from the other before she could return to work.

106.    Plaintiff also attempted to contact Ms. Atkins and Ms. Stanford about finding a new orthopedist, but they either did not respond or told her that they had no new information on her claim.

107.    On December 12, 2023, Plaintiff went to Family Express for another consultation because she knew that the practice was part of a previously approved panel.

108.    While there, Dr. Mary Leatherland listened to Plaintiff's symptoms, her increasing pain, and her increasingly difficulty in receiving care.

109.    Dr. Leatherland assured her that she was on the pre-approved panel, wrote her a note for another week of work, and ordered an MRI for December 21, 2023.

110.    As her last text to Ms. Gunn, Plaintiff informed her about the MRI appointment.

111.    Ms. Gunn read the text but never responded.

112.    That night, Plaintiff also received a letter from Ms. Stanford stating that her claim was denied.

113.    That letter was dated before her call with Ms. Stanford when she was told that no new information was available.

114.    When Plaintiff called Ms. Atkins the next day, Ms. Atkins informed her that only her appointment on November 22, 2023, would be covered despite other appointments stemming from the covered appointment.

115.    On December 26, 2023, The Family Express doctors diagnosed Plaintiff with a fractured T8 vertebrae along with other nerve injuries due to the accident and told her to make an appointment with an orthopedic doctor for further analysis.

116.    Plaintiff's primary doctor, Dr. Cummings, later confirmed Plaintiff's T8 vertebrae fracture and the other nerve damage.

117.    On December 28, 2023, Dr. Cummings referred Plaintiff to Dr. Marvin, a neurosurgeon, and told her to get him the paperwork for her to have FMLA leave.

118.    Despite initially refusing to give Plaintiff any FMLA paperwork, Defendants finally gave her the paperwork on January 2, 2024.

119.    Ms. Dogan's FMLA leave started January 5, 2024, but extended retroactively to November 11, 2023, meaning it should have ended on February 3, 2024.

120.    After Plaintiff picked up the FMLA paperwork, Defendants cut all contact with Plaintiff and has refused to provide her any notices despite federal and state requirements to do so.

121.    Defendants never provided Plaintiff with any letters or communication about her FMLA leave.

122.    In April 2024, after speaking with an Anthem representative about her employee health insurance, Plaintiff was informed that Defendants had backdated her insurance to not be applicable past January 1, 2024.

123.    The representative also informed Plaintiff that the backdating prevented her from challenging the denied coverage because the coverage was now outside of their sixty-day window.

124.    After her last day of work in November 2023, Plaintiff was never given any direction or instruction on how or where to continue paying her portion of her insurance premiums.

125.    After realizing that she did not have insurance coverage, Plaintiff also asked Anthem Insurance about creating a new insurance plan to cover the medical costs incurred from the accident or joining as part of COBRA.

126.    Anthem Insurance told her she could not be on their insurance unless she received COBRA from work or waited until an open enrollment period.

127.    However, Defendants did not offer Plaintiff COBRA or notify her of any steps she needed to take to receive benefits.

128.    Anthem Insurance told Plaintiff that the medical expenses from January 25 were not covered because the payments and expenses were not processed fast enough, but the charges in February were covered because they were somehow processed faster.

129.    Plaintiff's pain continued to worsen causing her to seek out a pain management doctor who prescribed her injections to help with back pain.

130.    In April 2024, Plaintiff had to begin paying out of pocket for the medical expenses incurred from the accident such as the injections as well as her other medications, such as her diabetic prescriptions that cost over $1,000 to her so far.

131.    In April and May 2024, Plaintiff got an insurance plan with Optima Insurance.

132.    The Optima Insurance plan did not fully cover her medical treatment and prescriptions.

133.    Despite Plaintiff's numerous requests for clarity on her insurance policy and employment status, the Human Resources office, the executive director, and the director of nursing failed to respond.

134.    Defendants have not notified Plaintiff of her employment status or their reasons for not responding to her.

135.    Defendants also failed to properly incorporate paid bonuses and shift differential pay into the regular rates and overtime rates during pay periods for Named Plaintiff's entire period of employment.

136.    For all of 2021 and up to December 8, 2022, Defendants made no effort to incorporate paid bonuses and shift differential pay into the regular rate and overtime rates.

137.    For all overtime up to December 8, 2022, Defendants only paid their employees 1.5 times the regular hourly rate with no incorporation of shift differentials or extra shift bonuses.

138.    Beginning with the December 8 - 14, 2022, pay period, Defendants started making some effort to incorporate the bonuses and shift differentials, but Defendants only incorporated an arbitrary $.81 or $.82 increase to the already 1.5 times the regular hourly rate that it had previously paid.

139.    This arbitrary increase still did not properly incorporate shift differentials and extra shift bonuses as required by the FLSA and VWPA.

140.    Starting on the pay period ending March 1, 2023, Defendants finally dropped the arbitrary increases and started calculating the regular rate and overtime rate with greater accuracy than they had in the previous two years.

**VII.    CAUSES OF ACTION**

**COUNT I**
**Fair Labor Standards Act ("FLSA") Class/Collective Claims**

141.    Plaintiffs re-allege and incorporate by reference paragraphs 1-140 as if fully set forth herein.

142.    By virtue of the acts described above, Defendants knowingly failed to pay employee Plaintiffs for all hours the employer suffered or permitted them to work.

143.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have sustained lost wages and benefits they would have otherwise received.

144.    Defendants are therefore liable under 29 USC § 216 to Plaintiffs for their unpaid overtime compensation, unpaid wages, an additional equal amount as liquidated damages, and attorney fees and costs.

## COUNT II
### The Virginia Wage Payment Act ("VWPA") Class/Collective Claims
### Va. Code Ann. § 40.1-29

145.    Plaintiffs re-allege and incorporate by reference paragraphs 1-144 as if fully set forth herein.

146.    By virtue of the acts described above, Defendants knowingly failed to timely pay employee Plaintiffs for all hours worked as well as comply with the FLSA's minimum wage and overtime requirements.

147.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have sustained lost wages and benefits they would have otherwise received.

148.    Defendants are therefore liable to Plaintiff for payment of wages owed, treble damages, 8% prejudgment interest, and attorney fees and costs.

## COUNT III
### Family and Medical Leave Act

149.    Plaintiff re-alleges and incorporates by reference paragraphs 1-148 as if fully set forth herein.

150.    By virtue of the acts described above, Defendants failed to provide Plaintiff oral or written notice of her eligibility for FMLA leave and written notice of all duties, rights and responsibilities she has under the FMLA.

151.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff did not receive insurance benefits, other equitable relief, or necessary medical treatment.

152.     Defendants are therefore liable under 29 U.S.C. § 2617 "for damages equal to the amount of any wages and employment benefits lost because of the violation, any interest on the wages and benefits lost calculated at the prevailing rate, an additional amount in liquidated damages equal to the sum of the lost wages, benefits, and interest, and possible equitable relief including reinstatement" as well as attorney fees and costs.

## COUNT IV
### Consolidated Omnibus Budget Reconciliation Act ("COBRA") Violation

153.     Plaintiff re-alleges and incorporates by reference paragraphs 1-152 as if fully set forth herein.

154.     By virtue of the acts described above, Defendants failed to provide Plaintiff with the required written notice of COBRA availability and has effectively denied her insurance coverage that should have been available to her.

155.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff was not notified of her right to COBRA and was unable to elect the coverage due to Defendants' actions.

156.     Defendants are therefore liable for equitable relief such as reimbursement for health expenses that should have been covered by her employee health plan.

## COUNT V
### Employee Retirement Income Security Act, 29 U.S.C §§ 1001, et seq. ("ERISA") Violation

157.     Plaintiff re-alleges and incorporates by reference paragraphs 1-156 as if fully set forth herein.

158.    Under ERISA, employers must provide employees with 60 days to challenge denials of medical coverage.

159.    By virtue of the acts described above, Defendants failed to provide Plaintiff with a reasonable opportunity to fully and fairly review and appeal Defendants' decision to deny her medical insurance after January 1, 2024.

160.    Without informing her of the decision, Defendants cancelled Named Plaintiff's health coverage effective January 1, 2024, while she was on FMLA leave without providing her written notice of required health insurance premium payments.

161.    Because of this decision, Named Plaintiff was forced to pay out of pocket for medical treatment that should have been paid for by her health insurance.

162.    As a direct and proximate result of Defendants' unlawful conduct, Ms. Dogan was not aware of the cancellation of her health insurance and was unable to appeal any decision by Defendants for the cancellation.

163.    Defendants are therefore liable to Plaintiff for all available equitable relief such as reinstatement of Plaintiff to her former position and reimbursement for health expenses that should have been covered by her employee health plan, along with attorney fees and costs.

## COUNT VI
### Interference under ERISA, 29 U.S.C § 1140

164.    Plaintiff re-alleges and incorporates by reference paragraphs 1-163 as if fully set forth herein.

165.    By virtue of the acts described above, Defendants discriminated against Plaintiff by terminating her insurance coverage during her FMLA leave despite her right to use that insurance during her leave and failing to inform her of her rights to continue coverage when the insurance was terminated.

166.    After discriminating against Plaintiff, Defendants also terminated her employment and backdated the insurance claims to deny her the chance to challenge the denial of insurance despite her right under federal law to challenge it.

167.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff had to pay out of pocket for her medical costs which minimized the necessary medical treatment that she was able to receive.

168.    Defendants are therefore liable for equitable relief such as reinstatement of Plaintiff to her former position and reimbursement for health expenses that should have been covered by her employee health plan.

## VIII.    PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, Chandra Dogan, prays this Court enter an Order:

A.    Certifying the proposed FLSA class action under 29 U.S.C. § 216(b);

B.    Certifying the VMWA class action under Fed. R. Civ. P. 23;

C.    Directing prompt issuance of notice pursuant to Fed. R. Civ. P. 23(c)(2) to the FLSA class, apprising them of the pendency of this action and permitting them to timely assert their rights under the FLSA and pursuant to Fed. R. Civ. P. 23(c)(2);

D.      Directing prompt issuance of notice pursuant to Fed. R. Civ. P. 23(c)(2) to the VWPA class, apprising them of the pendency of this action and notifying them they must affirmatively opt out of the class if they do not wish to be included in this action;

E.      Declaring that Defendants violated the FLSA by failing to pay their employees for all hours the employer suffers or permits them to work;

F.      Awarding Named Plaintiff and all others who join the proposed FLSA class damages in the amount of all wages unlawfully withheld, an equal amount in liquidated damages, plus prejudgment and post-judgment interest, attorney fees, and costs;

G.      Declaring that Defendants violated the VWPA by knowingly failing to pay their employees properly for all hours that they worked;

H.      Awarding Named Plaintiff and all others who remain in the proposed VWPA class action damages in the amount of three times the wages unlawfully withheld for Defendants' knowing violation, plus prejudgment and post-judgment interest, attorney fees, and costs;

I.      Declaring that Defendants violated the Family and Medical Leave Act by failing to provide Chandra Dogan with the proper notice of her eligibility for FMLA leave and notice of her rights, duties, and responsibilities under FMLA;

J.      Awarding Chandra Dogan "all wages and employment benefits lost because of the violation, any interest on the wages and benefits lost calculated at the prevailing rate, an additional amount in liquidated damages equal to the sum of the lost wages, benefits, and interest, and possible equitable relief including reinstatement as well as reasonable attorney's fees";

K.      Declaring that Defendants violated the Consolidated Omnibus Reconciliation Act by failing to provide Chandra Dogan with the required written notice and reasonable opportunity to fully and fairly review the Defendants' decision regarding her FMLA request;

L.     Awarding Chandra Dogan compensatory damages, other forms of equitable relief, and reinstatement of Plaintiff to her former position;

M.     Declaring that Defendants violated the Employee Retirement Income Security Act by failing to provide Chandra Dogan with the required written notice and reasonable opportunity to fully and fairly review Defendants' decision regarding her FMLA request;

N.     Awarding Chandra Dogan equitable relief such as reimbursement for all medical expenses that should have been paid by her insurance and reinstatement of Plaintiff to her former position;

O.     Declaring that Defendants unlawfully interfered with the Employment Retirement Security Act by discriminating against Chandra Dogan by terminating her insurance coverage during her FMLA leave despite her right to use that insurance during her leave and failing to inform her of her rights to continue coverage when the insurance was terminated;

P.     Awarding Chandra Dogan equitable relief and reinstatement of Plaintiff to her former position; and

Q.     Providing such further relief as this Court may deem necessary, just, and proper.

### JURY TRIAL DEMANDED ON ALL ISSUES SO TRIABLE

Respectfully Submitted,

**CHANDRA DOGAN, et. al.**

By:   _/s/ Christopher E. Collins_
      Christopher E. Collins

*Counsel for Plaintiff*

Christopher E. Collins (VSB No. 90632)
Mia Yugo (VSB No. 92975)
**YUGO COLLINS, PLLC**
25 Franklin Road, SW
Roanoke, Virginia 24011
Tel: (540) 861-1529
Direct: (540) 855-4791
chris@yugocollins.com
mia@yugocollins.com

*Counsel for Plaintiff*